IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEISHA M. SIMMONDS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.

Civil Action No. 10-601-RGA

---

## MEMORANDUM OPINION

---

Gary L. Smith, Esq., Newark, Delaware, Attorney for the Plaintiff

Charles M. Oberly, III, United States Attorney, Wilmington, Delaware; Dina White Griffin, Special Assistant U.S. Attorney, Philadelphia, Pennsylvania, Attorneys for the Defendant

---

July 3, 2012
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Keisha Marie Simmonds (f/k/a Keisha Marie Sutherland) ("Simmonds") appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying Simmonds' application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Cross-Motions for Summary Judgment filed by Simmonds and the Commissioner. This Court grants Simmonds' motion (D.I. 13), denies the Commissioner's motion (D.I. 17), and remands for further proceedings.

### A. Procedural History

Simmonds filed an application for DIB and SSI on July 23, 2007. Simmonds claimed a disability onset date of April 6, 2007. The Commissioner denied Simmonds' claim initially and on reconsideration. On December 9, 2008, Simmonds had a hearing before an Administrative Law Judge ("ALJ"), who on April 3, 2009, issued a written opinion finding that Simmonds was not disabled and therefore denying benefits. The Appeals Council denied Simmonds' request to review the decision, making the ALJ's decision the final decision of the Commissioner. Simmonds filed this lawsuit on July 14, 2010.

### B. Background

At the time of the ALJ hearing, Simmonds was a thirty-three year old, divorced mother of two daughters, ages seven and eight. Tr. 26. Simmonds assisted them with their homework and their personal hygiene, prepared them meals, walked them to the park, and drove them to school. Tr. 149-50. Simmonds washed dishes, did laundry, and generally took care of her household on

2

her own. Tr. 152. Simmonds did not have any trouble getting along with authority figures, and she previously attended religious services on Sundays. Tr. 154.

In 2001, Simmonds was hospitalized three separate times (first for seven days, then for two weeks, and then for a month) for post-partum depression and psychosis following the birth of her second child. Tr. 14, 194-201. On July 9, 2007, when police officers found Simmonds partially clothed and unable to explain the whereabouts of her daughters, Simmonds was hospitalized for ten days. Tr. 202-22, 269-77. After the hospitalization, Simmonds was diagnosed with bipolar affective disorder. Tr. 202-03.

On August 8, 2007, Simmonds began treatment with Habibah E. Mosley, D.O., a psychiatrist. Tr. 283-86. On examination, Simmonds was alert, oriented, cooperative, and she experienced no hallucinations or suicidal ideations. Tr. 285. Dr. Mosley determined Simmonds had a Global Assessment of Functioning ("GAF") score of 50, and diagnosed bipolar disorder with psychotic features.[1] Tr. 286.

Dr. Mosley continued to see Simmonds and treat her bi-monthly with medication. Tr. 33-34. On November 7, 2008, however, Simmonds reported to Dr. Mosley that she had stopped taking the medication because it "made her arms hurt." Tr. 298. Additionally, Simmonds reported that she had not slept for two days, she had a decreased appetite, and she was disoriented. Tr. 298. Simmonds was subsequently admitted to the hospital for ten days. Tr.

---

[1] As the Commissioner states, "A GAF score in the 41-50 range indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000)." (D.I. 18, p.4 n.2; to the same effect, see D.I. 14, p.13 n.1). "A GAF score [of] 50 is on the borderline between serious and moderate symptoms." See Santiago-Rivera v. Barnhart, 2006 WL 2794189, at *3 n.8 (E.D. Pa. Sept. 26, 2006).

287-96.

Simmonds saw Dr. Mosley later that month. Dr. Mosley reported that Simmonds was "doing better," and she did not seem to have a depressed mood or any suicidal/homicidal ideations. Tr. 283. Dr. Mosley stated that Simmonds was cooperative and her judgment seemed to be fair. Tr. 283. Dr. Mosley diagnosed bipolar disorder and adjusted Simmonds' medications. Tr. 283.

On December 1, 2008, Dr. Mosley completed a mental impairment questionnaire. Tr. 254-60. Dr. Mosley indicated that Simmonds had responded well to treatment in the past. Tr. 254. Dr. Mosley indicated that Simmonds was limited-but-satisfactory in her ability to remember work-like procedures, to maintain regular attendance and be punctual, and to ask simple questions or request assistance. Tr. 256. Dr. Mosley also found that Simmonds was seriously limited, but not precluded, in her ability to understand and carry out simple instructions, to maintain attention for two hour segments, to sustain an ordinary routine, to work with others, to make simple work-related decisions, to complete a normal workday and workweek, to perform at consistent pace, to respond appropriately to changes in a routine work setting, and to be aware of normal hazards. Tr. 256. Dr. Mosley found Simmonds was markedly limited and unable to meet competitive standards in accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. Tr. 256.

Dr. Mosley further concluded that Simmonds was moderately limited in performing the activities of daily living; would have moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and had three, two-week episodes of

decompensation within a twelve month period.² Tr. 257. Dr. Mosley diagnosed bipolar disorder with psychotic features and assessed a GAF score of 40. Tr. 254. In addition, Dr. Mosley concluded that Simmonds would be absent from work more than four days a month. Tr. 260.

On October 30, 2007, Simmonds had a consultative examination with Frederick Kurz, Ph.D. Tr. 223-30. During this examination, Simmonds' affect was constricted, but there were no express indications of depression or anxiety. Tr. 224. Dr. Kurz diagnosed psychosis and determined Simmonds' GAF score to be 65, which is indicative of mild symptoms. Tr. 225-26. Dr Kurz believed that if Simmonds consistently took her medication, her thought disorder could be "stabilized and controlled." Tr. 225.

On November 1, 2007, a state agency psychologist, Douglas Fugate, Ph.D., conducted a psychiatric review of Simmonds (that is, he reviewed the records available to him at that time) and diagnosed Simmonds as having a psychotic disorder. Tr. 231-33. Dr. Fugate concluded Simmonds had mild restriction of activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation for an extended duration. Tr. 239. Dr. Fugate concluded that Simmonds was moderately limited in six areas, and not significantly limited in any other area. Tr. 242-43.

Dr. Fugate also noted that Simmonds had a history of hospitalizations and noncompliance in taking her medication. Tr. 244. Dr. Fugate concluded that Simmonds had a constricted affect but was otherwise normal; he determined her GAF to be 65, indicative of only mild symptoms. Tr. 244. Dr. Fugate stated that Simmonds had no signs of anxiety or depression and no signs of

---

² While Simmonds had multiple episodes of two-week long decompensation in her lifetime, the evidence before the ALJ did not support the conclusion that there had been three of them within the year. Dr. Mosley's opinion on this point was therefore unsupported by medical evidence.

psychosis. Tr. 244. Dr. Fugate noted that Simmonds was independent in daily living and was able to care for her two daughters. Tr. 244. According to Dr. Fugate, if Simmonds consistently took her medication, her psychotic symptoms would be controlled. Tr. 244. On April 29, 2008, a state agency psychologist, Pedro M. Ferreira, Ph.D, reviewed the opinion of Dr. Fugate, and affirmed his conclusions. Tr. 253.

C. **Disability Determination Process**

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). In order to qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel,* 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the

sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments or impairment combination are not listed or medically equal to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able

7

to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer,* 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert ("VE"). *See id.*

### D. The ALJ's Decision

The ALJ concluded that Simmonds had the severe impairment of bipolar disorder with psychosis. Tr. 13-15. Despite this diagnosis, the ALJ found that Simmonds had the RFC to perform simple, unskilled light work with a sit/stand option, that avoided climbing, working at heights, or working with hazardous machinery, and required no more than occasional interaction with supervisors, co-workers, and the general public. Tr. 17-19.

The ALJ reached this conclusion based on a determination that the opinion of Simmonds' treating physician, Dr. Mosley, lacked support from the record. Tr. 16. The ALJ found fault with Dr. Mosley's evaluation of Simmonds, stating specifically that a decreased GAF after a year

of therapy and medication was an inconsistent evaluation, and not supported by the record.[3] Tr. 16. Additionally, the ALJ determined that Dr. Mosley's qualitative assessment did not differ substantially from that of the State agency consultants. Tr. 16.

Based on Simmonds' RFC, age, educational background, work experience, and the opinion of the VE who testified before the ALJ, the ALJ determined that Simmonds could perform a significant number of jobs existing in the national economy. Tr. 19-20. The ALJ disregarded the opinion of the treating psychiatrist, Dr. Mosley, when posing the hypothetical question to the VE. Tr. 42-43.

The ALJ therefore concluded that Simmonds was not disabled. Tr. 20.

### E. Arguments on Appeal

Simmonds makes two arguments on appeal. First, Simmonds argues that the ALJ improperly discounted the weight given to the treating physician's opinion while improperly giving too much weight to the non-treating psychologists' opinions (Dr. Kurz and Dr. Fugate).

Second, Simmonds argues the ALJ's hypothetical question posed to the VE was deficient because it did not take into account Dr. Mosley's opinions about Simmonds' limitations. Of course, the VE's answer–stating that Simmonds could perform certain available jobs–was based on the facts in the hypothetical question. The second argument, as the Commissioner notes, is dependent on the first argument. (D.I. 18, p. 18).

### F. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by

---

[3] The ALJ also rejected Dr. Mosley's December 2008 GAF assessment because, according to the ALJ, it lacked support with the "remaining evidence of record." Tr. 16. The analysis that follows does not appear to be an elaboration on that point.

9

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., evidence offered by treating physicians)-or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision if it

is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

### G. <u>Analysis</u>

The Third Circuit follows the "treating physician doctrine." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). This means that the ALJ must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all. *See Mason*, 994 F.2d at 1067. When a physician has treated a patient over an extended period of time, that physician's opinion should typically be afforded great weight. *See Dass v. Barnhart*, 386 F. Supp. 2d 568, 576 (D. Del. 2005). A treating physician's opinion is then afforded "'controlling weight'" if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence [in the claimant's] case record.'" *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)). A final disability determination must not conflict with an opinion deserving of controlling weight.

An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence . . . ." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). That opinion may not be rejected without reason or for the wrong reason. *See id.* at 317. When there is contradictory medical evidence, the ALJ must carefully evaluate how much weight to give the treating physician's opinion and provide an explanation as to why the opinion is not given controlling weight. *See Gonzalez*, 537 F. Supp. 2d at 660.

Thus, even when the treating source opinion is not given controlling weight, it does not

11

follow that it deserves no weight; the ALJ must apply several factors in deciding how much weight to assign it. *See id.* These include the treatment relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion offered by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See id.* If an ALJ fails to conduct this analysis, a reviewing court cannot judge whether the ALJ actually considered all the relevant evidence, and the ALJ's decision cannot stand. *Id.*

The ALJ discredited the opinion of the treating physician, Dr. Mosley, on the basis of one specifically identified factor: supportability of the opinion offered by the medical evidence. Dr. Mosley determined Simmonds' GAF to be 50 on August 8, 2007; Dr. Mosley determined it to be 40 on December 1, 2008. No doctor offered a contrary opinion, or offered any reason to discount Dr. Mosley's opinion. On September 30, 2007, Dr. Kurz and Dr. Fugate did determine Simmonds' GAF to be 65, and Dr. Kurz did base this determination partially on his personal examination of Simmonds. However, assuming this determination is given substantial weight, it offers no support for discounting a GAF determination made by the treating physician more than a year later, shortly after Simmonds had been hospitalized for ten days.

A layman would expect that a person who is getting appropriate psychiatric treatment would show improvement. The layman would not understand the implications of a ten-day psychiatric hospitalization, but the layman might reasonably assume that at the time of hospitalization, Simmonds' GAF was very likely substantially reduced. The layman would not know what impact the hospitalization and subsequent release would have on Simmonds' GAF.

None of this caused the ALJ any pause. Even though the ALJ pointed to no medical evidence that would contradict Dr. Mosley's December 2008 conclusion that Simmonds' GAF was 40, the ALJ rejected it. If the conclusion was based on the ALJ's own medical judgment (as it appears to have been), that would be improper. The ALJ may not "play[] doctor." *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (internal quotations omitted).

Dr. Kurz and Dr. Fugate did not identify any flaw in the treating physician's opinions. They merely stated a contrary view. *Cf.* Tr. 223 *with* 231.

Discounting Dr. Mosley's opinion had consequences. The VE was shown Dr. Mosley's December 1 questionnaire, and he noted that if Dr. Mosley's report was accepted, "based on the limitations contained in this report, there would be no work that could be performed." Tr. 45. When asked to explain the basis for this opinion, the VE responded, "Well, [Dr. Mosley], first [gives] a GAF of 40 and the highest in the past year 50, so this evaluator is saying right off, this person is unable to function in a . . . work setting." *Id.*

This Court concludes that the ALJ articulated no viable basis to discount Dr. Mosley's opinion. Furthermore, assuming that the ALJ had done so, the ALJ did not sufficiently set out the analysis required to decide how much weight to give Dr. Mosley's opinion. *See Gonzalez*, 537 F. Supp. 2d at 660.

### H. Conclusion

For the reasons discussed above, Simmonds' Motion for Summary Judgment is granted; the Commissioner's Motion for Summary Judgment is denied. The matter will be remanded for proceedings consistent with this opinion.